COOK, Justice.
Noel Turner and his wife Margaret Turner sued Larry Hansen and his wife Sharron Hansen; Century. 21 Reeves Realty, Inc.; and its agent Debbie Gautreaux. The Turners’ complaint alleged fraudulent misrepresentation, fraudulent concealment, fraudulent inducement, negligence, and wantonness. The trial court entered a summary judgment for all the defendants. The Turners appealed. The Court of Civil Appeals reversed the summary judgment as to Century 21 and Debbie Gautreaux, but affirmed it as to the Hansens. See Turner v. Century 21 Reeves Realty, Inc., 705 So.2d 373 (Ala.Civ.App.1996). We have granted the Turners’ petition for certiorari review to consider whether the Court of Civil Appeals erred in affirming the summary judgment as to the Hansens. We reverse the judgment of the Court of Civil Appeals as it relates to the fraudulent misrepresentation claim against the Hansens, but we affirm that judgment as it relates to the fraudulent concealment, fraudulent inducement, negligence, and wantonness claims against the Hansens.
In late September 1993, the Turners purchased a house from the Hansens. The house was located at 2555 Wagon Wheel Drive in Mobile, Alabama. The Hansens had hired Debbie Gautreaux, a real estate agent with Century 21 Reeves Realty, Inc., to sell their house. The house is a three-bedroom, two-bath home with an office/study adjacent to the master bedroom and overlooking the backyard. The backyard slopes toward the rear of the house; the slope causes water to accumulate outside the offiee/study area during rainstorms. A drainage system, installed by the owners prior to the Hansens to keep water from accumulating behind the office/study area, contains three drain inlets/grate openings; that drainage system is located outside the office/study area and the rear porch. The office/study flooded approximately seven days after the Turners had moved into the house. In February 1993, six months before the Turners purchased the house, the offiee/study had flooded; on that occasion the Hansens had to replace the pan-elling, pull up the carpet, and eventually replace the carpet with indoor/outdoor carpet. After the flooding, the Hansens also added additional drainage equipment to the system.
On this certiorari review, we must determine whether the evidence before the trial court created a genuine issue of material fact on the claims against the Hansens, and, if not, whether the Hansens were entitled to a judgment as a matter of law. “[A]n issue is genuine if reasonable persons could disagree.” Bramlett v. Adamson Ford, [Ms. 2950526, Dec. 20, 1996] — So.2d - (Ala. Civ.App.1996), citing Schwarzer, “Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact,” 99 F.R.D. 465, 481 (1982). We also must view the record in the light most favorable to the Turners and resolve all reasonable doubts against the Hansens. Pursuant to Ala.Code 1975 § 12-21-12, the Turners, to defeat a properly süpported summary judgment motion, must present substantial evidence, i.e., “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). On their claim of fraudulent misrepresentation, the Turners must show that the Hansens made a false representation concerning a material fact and that the Turners relied on that representation to their detriment. Cruse v. Coldwell Banker/Graben Real Estate, Inc., 667 So.2d 714 (Ala.1995).
The Turners argue that the Hansens were not entitled to a summary judgment on their claims. The Turners presented evidence that the Hansens knew there was a flooding problem with the Wagon Wheel Drive home. The Hansens argue that the Turners did not specifically ask them whether the house had drainage problems. However, the Hansens signed a “Seller’s Disclosure Statement,” which contains the following questions, with the Hansens’ answers:
*380 “A. ARE YOU (SELLER) AWARE OF ANY PROBLEMS OR POTENTIAL PROBLEMS, PAST OR PRESENT, WITH ANY COMPONENT OF YOUR PROPERTY (Defects, Malfunctions, etc.) _ YES X NO
[[Image here]]
“B. ARE YOU (SELLER) AWARE OF ANY OF THE FOLLOWING:
[[Image here]]
“4. Flooding, drainage or grading problems. (Is property in a flood plain?) YES X NO”
Above the Hansens’ signatures on the disclosure statement is the declaration: “SELLER CERTIFIES THAT THE INFORMATION HEREIN IS TRUE AND CORRECT TO THE BEST OF THE SELLER’S KNOWLEDGE AS OF THE DATE SIGNED BY THE SELLER.” Before signing the disclosure statement, the Hansens were aware that the offiee/study area had flooded in February 1993 and that the flooding had required them to add additional drainage. In fact, before checking “no” on the disclosure statement, the Hansens reminded their agent of the flood problem that had occurred in February 1993. Gerald Bolton, the Turners’ agent, stated that he inquired of Debbie Gautreaux about the possibility of drainage problems, after becoming concerned about the presence of a drainage system in the backyard. However, Gau-treaux responded by stating that there were no problems. There was further testimony by Bolton that the Turners decided not to have a home inspection, but to go ahead and purchase the house, after reviewing the disclosure statement, which stated that there had never been any problems with flooding, drainage, or grading that the Hansens were aware of.
The Hansens also argue that no evidence exists to indicate that the Turners were misled or that they relied upon the disclosure statement; they point to evidence indicating that the Turners did not see the disclosure statement until December 1993, two months after closing on the house in October 1993. Mr. Turner testified by deposition:
“Q. Had you seen the disclosure statement prior to the day that Mr. Bolton faxed it to you?
“A. No, I had not.
“Q. So the first time you saw it was in December of ’93?
“A. That’s correct.”
(C.R. 135.) Mrs. Turner testified:
“Q. ... When was the first time you saw this disclosure statement?
“A. I don’t know.”
(C.R. 197). However, Gerald Bolton asserts that he showed the Turners the disclosure statement and discussed it with them before the Turners made an offer on the house. Bolton testified to the following:
“Q. You know that Noel and Margaret have both already given depositions in this case?
“A. That’s what I’ve been told, yes.
“Q. My recollection of their testimony— and I’m sure some lawyer would jump up and correct me if I’m wrong — is that the seller’s disclosure statement was not something that they saw before closing, before they bought the house. Is that your recollection?
“A, No. My recollection is that they saw that as—
“Q. Why do you say that?
“A. Because as part of our discussion of whether or not they would want to take advantage of an Inspect-a-Home inspection, since there were no revelations on the disclosure statement that would have indicated a problem, they opted not to.
“Q. How did they get a copy of it?
“A. I believe Debbie faxed me a copy of it, of the disclosure her seller had filled out.
“Q. Okay. When?
“A. When did I get a copy of it or when did—
“Q. ■ When did she fax you a copy?
*381 “A. It was around — right around the time that we were doing the offer and considering whether or not to be concerned about it.
“Q. What did you do with it?
“A. Showed it to them, showed it to the Turners.
“Q. How did you show it to them? Did you give them a copy of it?
“A. No, I didn’t give them a copy, I don’t believe, that they took away with them. I simply shared that and the information on it with them.
“Q. And you didn’t give them a copy of it?
“A. It’s a simple form. No. I don’t remember that I did, Mr. Newell.
“Q. All right. And it’s your recollection that Debbie had faxed you a copy of it?
“A. • Yes, sir, I believe she did, she had, uh-huh.
[[Image here]]
“Q. And do I understand concerning the home inspector that, of course, the Turners were advised that they could get a home inspector?
“A. Yes, sir.
“Q. But that it is your understanding that they were satisfied concerning the condition of the property after reviewing the disclosure statement and you making your inquiry to Debbie Gautreaux about the drainage at the Wagon Wheel address?
[[Image here]]
“A. That’s correct, uh-huh.
“Q. Okay. And as you sit here today, you’re absolutely certain that Noel and Margaret Turner expressed concern about the drainage of the property?
[[Image here]]
“A. Yes, sir.”
(C.R. 752-74, 799).
Conflicting evidence exists as to whether the Turners saw the disclosure statement and relied upon it before closing on the house. However, this conflicting testimony goes to the question of weight to be given the evidence, that question that should be determined by the jury.
Therefore, the Hansens were not entitled to a judgment as a matter of law on the claim of fraudulent misrepresentation. The trial court erred in entering the summary judgment for the Hansens on that claim. Therefore, we reverse that portion of the judgment of the Court of Civil Appeals affirming the summary judgment as to the fraudulent misrepresentation claim against the Hansens. The question whether the Turners justifiably relied on the Hansens’ representation on the disclosure statement is a question of fact for the jury. The evidence regarding the disclosure statement is substantial evidence from which a jury could reasonably infer that the Hansens defrauded the Turners, notwithstanding the Hansens’ evidence that in preparing the disclosure statement they followed Gautreaux’s advice.
We agree with the Court of Civil Appeals that the Turners failed to present substantial evidence of an agency relationship between the Hansens, Century 21, and its employee Debbie Gautreaux. Nevertheless, the Turners’ claims against the Hansens did not depend on proof of such an agency relationship.
The judgment of the Court of Civil Appeals, insofar as it affirmed the summary judgment as to the fraudulent misrepresenta-, tion claim against the Hansens, is reversed. The judgment of the Court of Civil Appeals, insofar as it affirmed the summary judgment as to the-fraudulent concealment, fraudulent inducement, negligence, and wantonness claims against the Hansens, is affirmed. The case is remanded for further proceedings consistent with this, opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOOPER, C.J., and MADDOX, SHORES, HOUSTON, KENNEDY, BUTTS, and SEE, JJ., concur.